SIMON LAUBACH *v.* THE STATE.

1. CONTINUANCE — NEW TRIAL.— An application for a continuance, complying in every respect with the requirements of the statute, averred that the purpose of the desired testimony was to prove that the defendant owned the animal alleged to have been stolen by him, or, if not, that he honestly believed he was the owner. *Held,* that such evidence being material, and there being other evidence tending to support this defense, not inconsistent with the facts proved, a new trial should have been granted because of the refusal of the continuance.

2. PRIVILEGE OF COUNSEL — CASE STATED.— The county attorney, when commenting upon the evidence in his closing argument, was interrupted by the defendant in person with the statement that if he had the absent witnesses he could show different. The county attorney, addressing the jury, stated that the brother of the absent witnesses told him that they, if present, would testify against the defendant. *Held,* that such a remark was unwarranted by the law or the facts of the case, and was the assertion of a fact not in evidence, and a proceeding prejudicial to the defendant.

3. PRACTICE.— In the trial of all and particularly of criminal cases, the court below should strictly enforce rules 36, 38, 39, 40 and 41 for the government of argument in the District Court.

4. CHARGE OF THE COURT — CASE STATED.— After having made the objectionable remarks, the county attorney sought to correct the error by asking the court to charge the jury that they were not to consider the argument or any remarks made by counsel *pro* or *con,*

but should be governed by the law as given in charge, and the facts as testified on the stand. *Held*, that not only did the remedy sought to be applied come too late, but it announced an erroneous principle of law. Legitimate argument is proper for the consideration of the jury.

APPEAL from the District Court of Guadalupe. Tried below before the Hon. EVERETT LEWIS.

The opinion states the nature and the result of the case, which was a prosecution for horse-theft.

J. H. Gary was the first witness introduced by the State. He testified that he lived in Guadalupe county, and that his brand was a triangle and the letter R connected. He owned a gray mare in that brand, which ran on the San Geronimo near the crossing of the Seguin and San Antonio road, and near the residence of Fletcher Thompson in Guadalupe county. She left home and strayed off when she was a two-year-old. The witness knew from report that the animal was on the range named. He recovered the mare in 1882. She had a year-old colt with her. Ben Applin brought the mare to the witness. The witness did not know, of his own knowledge, that he owned the colt for the theft of which the defendant had been indicted and was being prosecuted. The mare, however, was the property of the witness, and had never been owned by any one else. The witness did not know that the animal for the theft of which the defendant was being prosecuted was the colt of his mare. The witness had never given the defendant or any other person his consent to the taking of the colt. The defendant approached the witness after the indictment was found, and told the witness that he had found the colt afflicted with worms, and that, if he had known that the witness owned the colt, he would not have taken it. The gray mare spoken of was the only mare the witness owned on that range

Fletcher Thompson testified for the State that he knew both the defendant and the witness Gary, and that he lived about three miles from the defendant in 1880. At that time a gray mare branded with a triangle and the letter R, connected, ranged near the house of the witness in Guadalupe county. She had with her, in the spring of that year, a colt which followed and sucked her. It was a sorrel-dun colt with the two hind feet white up to the ankles, a brown streak down the back, and a drooped rump. It was not then branded, and the witness watched to see if any one would take it. About June, 1880, or when the colt was something over a year old, it disappeared, and about six months later the witness saw the same colt, to the best of his knowledge and belief, in the possession of Milton Gaines, a witness who was present to testify in this case. The witness saw this same colt on the day of this trial, hitched to the court house fence, in the possession of Milton Gaines.

The defendant approached the witness, after the former's indictment for the theft of this animal, and asked to be informed of what the witness would testify, and the witness told him in substance what he stated on the stand. The defendant remarked at that time that the colt was afflicted with worms when he took it up, and was nearly dead; that when he took it up he did not himself know that it was his, but was so informed by his brother-in-law. The colt seen by the witness in the possession of Milton Gaines shows that it had been badly injured by worms. The colt, when the witness saw it in the possession of Gaines, was branded I U I. The witness could not remember on what part of the mare's body the brand of a triangle and the letter R, connected, was traced.

Ben Applin testified for the State that he saw the colt on the morning of the trial, in the possession of Milton Gaines. He knew this animal when it was a sucking

colt. It was the colt of, ran with, and sucked J. H. Gary's gray mare. The witness once had the mare and colt up for the purpose of branding the latter for Mr. Gary, but it jumped out of the pasture. In 1881 the witness took the mare with a yearling and sucking colt to Mr. Gary. In 1881 this colt was missing, and is the same that is now in the possession of Milton Gaines.

Milton Gaines, for the State, testified that the colt which he had that morning exhibited to appellee and Thompson, and which was still in his possession, was the same animal which he got from Willie Halm. When he got the animal it was in defendant's brand, I U I. From marks on it, the colt appeared to have had worms once under the root of the tail. This witness concurred with the others in his description of the animal.

Willie Halm testified that he got the animal in question from the defendant in March, 1881, and sold it to Gaines. It was in defendant's brand when he got it. He identified the animal exhibited by Gaines on the day of the trial as the same.

Neill and Davis testified, for the State, that to the best of their knowledge and belief the animal in the possession of Gaines was the same colt which in 1880 followed and sucked Gary's gray mare.

F. Simons testified, for the defense, that he lived near New Braunfels in Comal county. That for several years his wife owned three mares which ran on the San Geronimo in Guadalupe county near where the defendant lived. In May or June, 1880, he traded to the defendant one of the mares branded O K, and any colts which she might have, making the trade with the defendant's brother Adam. The witness had not seen the mare since she was a colt, and does not know except from hearsay that she has ever had a colt.

On cross-examination, the witness stated that he saw a brown or bay mare about three years before this trial,

in Guadalupe county. He was then searching for this mare, and a two year old colt which he had been told she had. He found the mare on the range with a bunch of horses in which there were a number of young colts. He did not see the two year old colt for which he was looking, nor did he see that the mare had a colt with her of any description. The brown mare was branded O K.

.Jake Smith, a brother-in-law to the defendant, testified that the defendant traded with the witness. Simons in 1880 for a brown mare branded O K; that the mare had a year-old colt, and the witness believed that the colt now in the possession of Gaines is the same colt. The mare ran at the time right around the defendant's house, where the defendant then lived. The colt was afflicted with worms and would have died had not the defendant penned and cared for it. The defendant got up the mare after he traded for her, and broke her, leaving the colt on the range. When the defendant took up and branded the colt he claimed it as his and as the offspring of the brown mare, and that colt, the witness believes, is the one for the theft of which he is now being prosecuted.

*Ireland & Henderson,* for the appellant: Appellant contends that he was entitled to a new trial by virtue of article 560, subdivision 6, of Code of Criminal Procedure, because the statement of facts shows that it did appear upon the trial that the evidence of the witnesses Adam Laubach and Tom and Hub Fennel was of a material character, and that the facts set forth in the application were probably true. Defendant's application sets out that he expected to prove by Adam Laubach, that he, as the agent of defendant, traded for a certain bay mare and colt, the property of Mrs. Simons, of Comal county, in the spring of 1880; and that this was probably true is shown by the testimony of F. Simons, of Comal county, who says that in May or June, 1880, he traded to defend-

ant, through his brother Adam, a certain brown or bay mare branded O K with any colts she might have — the same being his wife's property, and running on the range in Guadalupe county, in the vicinity of defendant. Except from hearsay, he did not know that she had any colt. Defendant's application ·further sets out, that he expected to prove by Adam Laubach, and by Tom and Hub Fennel, that the colt he is charged with stealing is the identical colt of the Simons O K mare, traded for by Adam Laubach, and therefore the property of defendant. That this fact — than which nothing could be more material — was probably true, is shown by the testimony of Jake Smith and Brack Thompson. It will not do to say that defendant had testimony on the trial directly bearing on the facts set out in the application, and that the evidence of the absent witnesses was cumulative, and therefore the overruling of the application did no injury to defendant. Such a construction would take away all the force and meaning of the proviso in article 560 of Criminal Procedure, because it would be holding that the very thing that would render most probable the truth of the facts set out in the application ought to defeat instead of obtain a new trial; which would render the proviso absurd. Moreover, it is not until the second application that the statute requires the defendant to set out that "the testimony cannot be procured from any other source known to the defendant."

Defendant's counsel respectfully urge that the evidence volunteered by the district attorney in his closing argument to the jury, considering its nature and connection with the legitimate evidence and its almost certain effect to influence the verdict to defendant's prejudice, of itself alone amply warrants a reversal of the judgment. It has been repeatedly decided by this court that illegal evidence, of a material nature, admitted over defendant's objection, although afterwards attempted to be with-

drawn and its effects counteracted by a charge of the court, is good cause for reversal, upon the ground that the damage has already been inflicted, and the cure too uncertain in its nature upon which to risk the life or liberty of a human being. The case now presented seems to be even stronger, and the verdict of the jury more likely to have been affected by the statement and assurance of the district attorney. It must be borne in mind that the facts defendant expected to prove by his absent witnesses, Tom and Hub Fennel, would have constituted a perfect defense. Jake Smith, a brother-in-law of the defendant, testified to those facts, with what effect upon the jury it is impossible to say, but it may safely be assumed that nothing short of the most thorough and unanimous belief on the part of each of the twelve jurymen in the truth of Jake Smith's testimony would prevent them from being seriously affected by the assurance of the district attorney, made to the jury in his official capacity and on his honor as a man, that the brother of Tom and Hub Fennel had told him that if they (Tom and Hub) were present, instead of confirming they would contradict the evidence of Jake Smith. It is doubtful whether any legal evidence in rebuttal by the State would have had greater influence with the jury to defendant's damage. Is it not more than probable that every one of the jurymen believed the statement of the district attorney? But if one single juryman believed it, the irrevocable damage was inflicted. Can it be claimed that a conviction thus obtained would be "by the due process of the law?" Bill of Rights, sec. 19.

In addition to the otherwise obnoxious character of said statement, it was in violation of Rule No. 36 of "Rules for the District Court."

The rule is that counsel must confine themselves in argument to the facts brought out in evidence. *State* v. *Hamilton,* 55 Mo. 520; *State* v. *Waltham,* 46 Iowa, 55;

*Scripps* v. *Reilly*, 35 Mich. 371; *Larkins* v. *Tartar*, 3 Sneed, 681; *Lloyd* v. *Hannibal R. R. Co.* 53 Mo. 509; *Borden* v. *Briscoe*, 36 Mich. 254; Hilliard on New Trials, 525. That it is error and sufficient cause for a new trial to permit counsel, on objection and exception, to comment upon facts pertinent to the issue, but not in evidence, reference is made to the following authorities: *Dickerson* v. *Burke*, 25 Ga. 225; *Doster* v. *Brown*, Id. 24; *Cook* v. *Ritter*, 4 E. D. Smith, 253; *Lloyd* v. *Hannibal R. R. Co.* 53 Mo. 509; *Kairne* v. *Trustees*, 49 Wis. 371; *Read* v. *State*, 2 Ind. 438; *Walker* v. *State*, 6 Blackf. 1; *State* v. *Lee*, 66 Mo. 165.

It has also been held good cause for a new trial to appeal to prejudices foreign to the case made by the evidence and calculated to have an injurious effect. *Ferguson* v. *State*, 49 Ind. 33; *Hennies* v. *Vogel*, 66 Ill. 401; *Kinnaman* v. *Kinnaman*, 71 Ind. 417; *Tucker* v. *Henniker*, 41 N. H. 317; *State* v. *Smith*, 75 N. C. 306. Nor will instruction to the jury, that they should disregard, or not consider such matters, cure the error. *Scripps* v. *Reilly*, 35 Mich. 371; *Forsyth* v. *Cothran*, 61 Ga. 278; *Tucker* v. *Henniker*, 41 N. H. 317; *Martin* v. *Orndorff*, 22 Iowa, 505.

It need hardly be urged that the interruption of the district attorney in his closing argument, by the defendant in person, furnishes no excuse or palliation for the statements made by the district attorney. He was wholly incapable of conducting his own case, and the district attorney should have let his remark pass unnoticed.

*H. Chilton*, Assistant Attorney General, for the State.

WILLSON, J. The indictment charges the defendant in due form, with the theft of " one animal of the horse kind, namely a colt, between the age of one year and two years old," the property of J. H. Gary. The defend-

ant was convicted of the charge, and his punishment assessed at five years' confinement in the penitentiary.

When the case was called for trial, the defendant presented to the court an application for a continuance, for the want of the testimony of three witnesses by whom, he states, he expected to prove that he was the owner of the identical animal that he is charged with stealing, at the time it is alleged to have been stolen. The court overruled the defendant's application for a continuance, to which the defendant at the time excepted as appears by his bill of exceptions in the record. We think the application shows reasonable diligence on the part of the defendant to obtain the attendance of the witnesses named, and that the application in other respects complied with the requirements of the statute. The defendant's defense was that the animal he was charged with stealing was his own property at the time he took it, or that, if not his own property, he honestly believed it to be such, and took it in good faith, and without any fraudulent intent. There is evidence in the case tending to support this defense, and the state of case thus contended for is not unreasonable, and is not inconsistent with the facts proved in the case. The evidence for which he sought to obtain a continuance was certainly of a material character, and we see no reason for believing that the facts stated in his application are not probably true. The evidence in the case is to our minds unsatisfactory when taken in connection with the defendant's application for a continuance, and we think the court erred in not granting the defendant a new trial.

There appears in the record of this case the following bill of exception taken by defendant, viz.: "Be it remembered that when the district attorney was arguing the case to the jury, and commenting upon the testimony before them in his closing speech, the defendant, sitting by in person, spoke and said, 'If I had the witnesses Tom and Hub Fennel' (these being two of the witnesses

named in defendant's application for a continuance) 'I could show about it,' or words to that effect, whereupon the district attorney turned and looking, said to the jury in substance, 'The brother of these men told me if they were here their testimony would be against you.' Whereupon objection was made to these remarks of the district attorney, and he then said to the jury not to regard anything he or defendant had said; the court suggested to defendant's counsel he had best tell his client to cease talking; which he did and the argument proceeded," etc. It is insisted by defendant's counsel that this language of the district attorney was improper, not warranted by the rules of court, and calculated to injure the rights of the defendant, by prejudicing his case in the minds of the jury. We think the objection is well taken. The statement complained of was not an argument based upon the law of the case, nor upon the facts in evidence. It was an assertion of the existence of a fact not in evidence, and of a fact which, if believed by the jury to be true, would naturally weigh strongly against the defendant.

There were other improper remarks made by the district attorney in the hearing of the jury during the progress of the trial, which are properly presented by bills of exception for the consideration of this court. While the remarks complained of were out of place, and should not have been allowed to pass uncensured by the court, we would not feel called upon to reverse the judgment upon this ground alone, but when they are considered in connection with the other facts and proceedings in this case, we think they were well calculated to affect injuriously the rights of the defendant, and to deprive him of a fair and impartial trial upon the law and the evidence of his case. At the Galveston term of this court, in the case of *Conn* v. *State* (11 Texas Ct. App. 390), appealed from the same court that this case is appealed from, a similar breach of the rules governing the argument of

causes, committed by the district attorney, was very plainly and forcibly condemned by this court; but it seems the admonitions contained in that opinion have not had a salutary effect, and we are again compelled to express our condemnation of such a practice. Rules 36, 38, 39, 40 and 41 for the government of argument in the District Court should be rigidly enforced, and especially in criminal trials.

It seems that in this case the district attorney, after he had made the objectionable remarks complained of by defendant, sought to correct the error by asking of the court a charge to the jury, which is as follows: "The jury in their deliberation in this cause should not, in finding their verdict, be influenced for or against the defendant by any *argument* or remarks made either by the counsel for the defendant or the State, but must be governed solely by the law as given them by the court, and the facts testified to by the witnesses on the stand." We think this came too late to remedy the evil, and that, furthermore, it was an improper instruction. We do not understand that the jury are to disregard *argument*. The law provides for argument, and it is one of the most effectual means known to the law of arriving at the truth. If a jury is to be uninfluenced by argument, then why have argument? It would be wise to forbid it, and thus save much valuable time. If the district attorney had requested the court to instruct the jury that he had committed an error in stating to them what had been told him by a brother of the absent witnesses Fennel, and that they must disregard his remarks upon this subject, and not suffer their minds to be in the least influenced thereby, it would at least have been a partial reparation of the wrong; but the charge which was given at his instance was, we think, better calculated to intensify than to palliate the error.

We do not think the defendant has had a fair and im-

partial trial under the law, and the court erred in not, granting him a new trial; and for these reasons the judgment is reversed and the cause remanded.

*Reversed and remanded.*